## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| ROBIN MAROCCHINI, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No.: 1:20-cv-356 |
| | * | |
| ROBERT C. BROWN and | * | JURY TRIAL DEMANDED |
| ROBERT C. BROWN, MD, P.C., | * | |
| d/b/a BROWN, PEARSON & GUEPET | * | |
| GYNECOLOGY AND UROGYNECOLOGY, | * | |
| | * | |
| Defendants. | * | |

## AMENDED COMPLAINT

COMES NOW Plaintiff, Robin Marocchini by and through her attorneys, and files this her Complaint against Defendants, Robert C. Brown and Robert C. Brown, MD, P.C., d/b/a Brown, Pearson & Guepet Gynecology and Urogynecology, and for their causes of action would show unto the Court the following:

## PARTIES

1.      Plaintiff Robin Marocchini is over the age of majority and is a resident and citizen of the state of Florida.

2.      Defendant Robert C. Brown is over the age of majority and is a resident and citizen of the state of Alabama.

3.      Defendant Robert C. Brown, MD, P.C., d/b/a Brown, Pearson & Guepet Gynecology and Urogynecology (hereinafter "BPG") is a professional corporation organized and existing under the laws of the state of Alabama, with its principal place of business in Fairhope, Alabama.  Robert C. Brown is the incorporator and agent of Robert C. Brown, MD, P.C., d/b/a Brown, Pearson & Guepet Gynecology and Urogynecology.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.  Further, venue is proper in the District Court for the Southern District of Alabama under 28 U.S.C. § 1391 because the events giving rise to the claim occurred in this District and the Defendants are subject to personal jurisdiction in this District.

## STATEMENT OF FACTS

5.      On October 15, 2019, Plaintiff Robin Marocchini was seen by Dr. Robert Brown to discuss medical issues that she was having with vaginal prolapse.

6.      After an exam and consult by Dr. Brown, he recommended that Mrs. Marocchini have a surgery to help repair her prolapse.  The recommended surgery was a sacrocolpopexy.  No other procedures were discussed at the initial office visit.

7.      Mrs. Marocchini was scheduled for surgery on November 11, 2019, with a pre-op appointment on November 5, 2019.

8.      Mrs. Marocchini attended the pre-op visit at Dr. Brown's office as scheduled on November 5, 2019.  Mrs. Marocchini and Dr. Brown discussed the procedure as well as the risks associated with same.  At this office visit, Mrs. Marocchini, was provided with two forms: (1) an "Informed Consent for Pelvic Prolapse and Incontinence Surgery" and (2) a BPG Surgical Consent form for a "robot assisted sacrocolpopexy and possible posterior repair."   Mrs. Marocchini executed both consent forms.

9.      On November 11, 2019, Mrs. Marocchini arrived at Thomas Hospital in Fairhope, Alabama for her scheduled surgery.

10.     During the surgery, and while Mrs. Marocchini was completely unconscious, Dr. Brown stopped the surgery and called Mrs. Marocchini's husband on his cell phone. He explained to Mr. Marocchini that during the surgery he noticed that Mrs. Marocchini still had her ovaries. Dr. Brown stated that he was "surprised" that Mrs. Marocchini still had her ovaries and that he wanted to remove them. Dr. Brown never asked permission to remove the ovaries, he never explained the risks of ovarian removal, nor did he go over any "pros and cons" of ovarian removal. This phone call lasted almost exactly one (1) minute.

11.     Prior to the aforementioned phone call, Dr. Brown had never discussed Mrs. Marocchini's ovaries with her.

12.     Dr. Brown proceeded with the surgery and removed Mrs. Marocchini's ovaries and fallopian tubes while he was preforming the scheduled sacrocolpopexy.

13.     When Mrs. Marocchini awoke from her surgery, she noticed a patch on her arm and asked her husband what it was. He advised her that Dr. Brown had removed her ovaries during the surgery and that the patch was for hormone replacement therapy.

14.     Mrs. Marocchini asked Dr. Brown why he had removed her ovaries when they have never discussed ovarian removal or "anything to do with my ovaries." Dr. Brown responded that he thought she would have wanted them removed.

15.     Mrs. Marocchini did not want her ovaries removed. After extensive research prior to her first operation in January 2019, she made the conscious decision to retain her ovaries. Her ovaries and fallopian tubes were removed by Dr. Brown without her consent, against her wishes, and to the detriment of her physical and mental health.

16.     There was no pre-operative discussion between Dr. Brown and Robin Marocchini regarding the performance of any concomitant procedures other than a prophylactic sling for occult

stress urinary incontinence. There was no discussion regarding ovarian conservation versus removal or the associated risks and benefits thereof.  Dr. Brown did not elicit the personal preferences of the Plaintiff nor did he consider her individualized risk of conservation versus removal when taking such things as family history of breast or ovarian cancer, psychological well-being, sexual function, and candidacy for synthetic hormone replacement therapy into consideration.  Dr. Brown did not relay any of the published medical evidence regarding opportunistic oophorectomy and he did not obtain informed consent, or any consent, to perform ovarian removal.

## COUNT I
## ALABAMA MEDICAL LIABILITY ACT

17.    Plaintiff adopts and incorporates by reference all of the allegations of the preceding paragraphs of this Complaint as if the same were set out fully herein.

18.    Defendants Robert C. Brown and Robert C. Brown, MD, P.C., d/b/a Brown, Pearson & Guepet Gynecology and Urogynecology are both "health care providers" within the meaning of the Alabama Medical Liability Act of 1987, §6-5-542 et seq. of the Code of Alabama (1975).

19.    In treating Mrs. Marocchini, the Defendants, including any individuals who were acting as employees or agents of any of the Defendants at relevant times, had a duty to exercise such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice ordinarily have and exercise under similar circumstances.

20.    Defendants and their employees, agents and/or servants negligently and/or wantonly breached the standard of care owed to Mrs. Marocchini by failing to comply with the applicable standard of care, including specifically as follows:

a.      Failing to review and/or appreciate Mrs. Marocchini's relevant medical history;

b.      Failing to elicit the medical personal preferences of the Plaintiff with regard to her ovaries and fallopian tubes;

c.      Failing to consider Plaintiff's individualized risk of conservation versus removal when taking such things as family history of breast or ovarian cancer, psychological well-being, sexual function, and candidacy for synthetic hormone replacement therapy prior to removing her ovaries and fallopian tubes;

d.      Failing to relay to Plaintiff any of the published medical evidence regarding opportunistic oophorectomy;

e.      Failing to obtain consent and/or informed consent from Mrs. Marocchini to remove her ovaries and fallopian tubes;

f.      Failing to inform Mrs. Marocchini of the risks associated with opportunistic oophorectomy;

g.      Failing to inform Mrs. Marocchini of the risks associated with hormone replacement therapy;

h.      Failing to develop and implement the policies and procedures applicable to patient consent;

i.      Failing to develop and implement the policies and procedures applicable to the review of patients' prior medical records and medical history;

j.      Failing to develop and implement sufficient policies and procedures relative to patient-physician communication;

k.   Failing to adhere to the minimum standard of care with regard to patient consent for medical procedures; and

l.   Failing to follow American Medical Association's guidelines for obtaining proper patient consent for medical procedures.

## COUNT II
## NEGLIGENCE AND WANTONESS

21.   Plaintiff adopts and incorporates by reference all of the allegations of the preceding paragraphs of this Complaint as if the same were set out fully herein.

22.   Defendants had a duty to provide medical treatment to Mrs. Marocchini that was within the applicable standard of care.

23.   Defendants breached this duty as listed above, and by negligently and/or wantonly failing to review Mrs. Marocchini's relevant medical history and by removing her ovaries and fallopian tubes against her wishes, without her consent and by preforming a medical procedure that was not therapeutically necessary or advisable.

24.   As a direct and proximate result of the Defendants' actions, Mrs. Marocchini has suffered physical and psychological injury along with pain and suffering, mental anguish, anxiety, depression, permanent injury, post-traumatic stress disorder, loss of enjoyment of life, and consequential and incidental damages.  These damages are expected to continue in the future.

## COUNT III
## ASSAULT AND BATTERY and TRESPASS TO PERSON

25.   Plaintiff adopts and incorporates by reference all of the allegations of the preceding paragraphs of this Complaint as if the same were set out fully herein.

26.   Dr. Brown preformed an unnecessary and ill-advised medical procedure on Plaintiff, while Plaintiff was unconscious, that Plaintiff had not consented to and did not want.

27.     Dr. Brown, during this procedure, intended to, and did, remove Plaintiff's ovaries and fallopian tubes without her consent.

28.     Dr. Brown's conduct in this regard was offensive to Plaintiff and all other reasonable people.

29.     As a direct and proximate result of the Defendants' actions, Mrs. Marocchini has suffered physical and psychological injury along with pain and suffering, mental anguish, anxiety, depression, permanent injury, post-traumatic stress disorder, loss of enjoyment of life, and consequential and incidental damages.  These damages are expected to continue in the future.

## COUNT IV
## LOSS OF CONSORTIUM

30.     Plaintiff adopts and incorporates by reference all of the allegations of the preceding paragraphs of this Complaint as if the same were set out fully herein.

31.     Robin Marocchini has been married to her husband, Thomas Marocchini, in excess of 31 years.  Plaintiff suffered a loss of consortium after November 11, 2019.  Defendants' negligence impaired the enjoyment of Mrs. Marocchini's marriage and diminished her capacity to provide the customary love, companionship, affection, society, comfort, solace and support that Mr. and Mrs. Marocchini experienced prior to Defendants' negligence.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully demands a judgement against these Defendants, jointly and severally, for compensatory and punitive damages in an amount to be assessed by a jury together with interest, costs and such other or further relief to which Plaintiff may be entitled.

**PLAINTIFF RESPECTFULLY DEMANDS A TRIAL BY JURY.**

Respectfully submitted,

BRASWELL, MURPHY & GRUBB, LLC
Attorneys for Plaintiff


*/s/ Kasie M. Braswell*
KASIE M. BRASWELL (BRASK5769)
E-mail: kasie@braswellmurphy.com
D. BRIAN MURPHY (MURPHD0754)
E-mail: brian@braswellmurphy.com
105 N. Conception Street, Suite 100
Mobile, Alabama  36602
(251) 438-7503 Office
(251) 438-7949 Facsimile

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

ROBIN MAROCCHINI,                          *
                                           *
    Plaintiff,                          *
                                           *
v.                                         *          Civil Action No.: 1:20-cv-356
                                           *
ROBERT C. BROWN and                        *
ROBERT C. BROWN, MD, P.C.,                 *
d/b/a BROWN, PEARSON & GUEPET              *
GYNECOLOGY AND UROGYNECOLOGY,              *
                                           *
    Defendants.                         *

**PLAINTIFF'S FIRST SET OF INTERROGATORIES AND**
**REQUESTS FOR PRODUCTION TO DEFENDANTS**
**ROBERT C. BROWN, ROBERT C. BROWN, MD, P.C. d/b/a**
**BROWN, PEARSON, & GUEPET GYNOCOLOGY AND UROGYNECOLOGY**

COMES NOW Plaintiff in the above-styled cause and propounds the following
Interrogatories and Requests for Production to be responded to by Defendants Robert C. Brown,
Robert C. Brown, MD, P.C. d/b/a Brown, Pearson, & Guepet Gynecology and Urogynecology
pursuant to the Federal Rules of Civil Procedure.  These discovery requests shall be deemed
continuing in nature and Defendant is required to update all responses herein prior to trial if
Defendant receives additional information which would require an update.

**INSTRUCTIONS**

1.      Each Interrogatory shall be answered separately and fully in writing under oath.

2.      All documents or things responsive to a request set forth herein shall be produced
as they are kept in the usual course of business or organized and labeled to correspond with the
categories set forth in these requests as required by the Federal Rules of Civil Procedure.

3. With respect to any documents or things withheld by you due to a claim of privilege or other objection, list for each such document or thing:

  a. The type of document or thing (e.g., memorandum, letter, etc.);
  b. The identity of the person(s) who prepared the document, who signed it, and over whose name it was issued;
  c. The identity of the intended recipient(s);
  d. The nature and substance matter of the document with sufficient particularity to enable the Court and parties to identify the document;
  e. The nature of privilege asserted or other objections;
  f. The identity of the person(s) having custody or control over said document(s) and to whom it was distributed;
  g. The number of pages; and
  h. Whether any non-privileged or non-protected matter is included in the document.

5. If any document or thing requested herein has been destroyed or otherwise disposed of, list for each such document or thing:

  a. type of document or thing (e.g. letter, memorandum, etc.);
  b. author(s)
  c. recipient(s)
  d. the approximate or actual date of the document;
  e. subject matter;
  f. the person who destroyed or otherwise disposed of the document or thing;
  g. in the case of disposition, the person to whom the document or thing was transmitted or to whom a copy was provided;
  h. the date of destruction or disposition; and
  i. the reason for destruction of disposition.

## DEFINITIONS

1. "Person" or "persons" means any individual, corporation, partnership, limited liability company, unincorporated association, or other legal entity or form of organization or association.

2. "You" or "Your" means Defendants, agents, officers, directors, employees, representatives, or other entities acting or purporting to act on its behalf.

3.      "And" as well as "or" shall be construed either conjunctively or disjunctively so as to bring within the scope of the request or interrogatory any documents or information that might otherwise be construed to be outside its scope.

4.      "Communication" means any occurrence whereby facts, opinions, data, or information are transmitted between two or more persons, including, but not limited to, any meeting, conversation, discussion, correspondence, or any other form of oral or written interchange.

5.      "Identify" has the following meanings in the following contexts:

    a.      when used with respect to a person, to provide that person's name, date of birth, address, home telephone number, work telephone number, employer, and place of employment;
    b.      when used with respect to a place or location, to provide the address, city, county, and state where that place is located;
    c.      when used with respect to a document or thing, to provide that document's or that thing's current location, author, recipient, subject matter, and date;
    d.      when used with respect to a transaction, occurrence, or act, to set forth the event or events constituting such a transaction, occurrence, or act, the location of the same, and the date and the persons participating in the same.

6.      The words "Document" or "Documents" are used to refer to the full scope of documents, whether in electronic or hard copy, writings, and other tangible things discoverable under the Federal Rules of Civil Procedure, in whatever form and however and by whomever made. Please note that "document(s)" as so defined include, but are not limited to, any documents or information stored on computer databases, electronic mail, or otherwise in any retrievable form, as well as every document, writing, or other tangible thing, including without limitation the following items, whether printed, typed, recorded, filmed, stored in a computer format, written, produced by hand or by any other process, and whether original, master, duplicate, or copy: statements; reports; charts; graphs; bills; statements of account; agreements; communications, whether interoffice, intraoffice, or otherwise; correspondence; papers; notes, memoranda,

summaries, minutes, records, videotapes, sound recordings and transcriptions of telephone conversations, personal conversations, interviews, meetings, conferences, facts, conclusions, impressions, and things similar to the foregoing; books, manuals, publications, and diaries; photographs; summaries of investigations; surveys; opinions and reports of expert witnesses, appraisers, or consultants; projections; corporate records; minutes of board of directors or committee meetings; desk calendars; appointment books; diaries; diary entries and notes; and any other information-containing paper, writing, or physical thing whether in electronic or hard copy.

## <u>INTERROGATORIES</u>

1.      Please state this Defendant's name correctly and/or the correct way this Defendant should be designated as a party defendant in an action at law (as of the time of the occurrences made the basis of this lawsuit and also as of the time these interrogatories are answered).

2.      Please state the name, address, title, and position of each and every person answering these interrogatories and/or providing any information from which the answers to these interrogatories are based.

3.      Please identify, list, and provide the full and complete name, address, occupation/job title/position, and employer of each and every person whom you and/or your attorney(s), representative(s), administrator(s), and/or medical staff understand, know, or believe to have personal knowledge of any subject, topic, or matter pertaining to this case, this litigation, Plaintiff Robin Marocchini allegations and claims, the events described in and made the basis of Plaintiff's Complaint, and any subject, topic, or matter pertaining to this case or the subject matter or issues involved in this case.

4.      Please identify, state, and provide the full and complete name, address, and job title/position of each and every person, medical provider, medical staff member, medical

professional, physician, nurse, registered nurse, nurse practitioner, licensed practical nurse, nurse assistant, physician assistant, mid-level provider, technician, technologist, counselor, intern, resident, and/or student health care practitioner who was involved in any way in the provision of, and/or billed for or was paid for, medical services, care, and/or treatment to Robin Marocchini at Your facility.

In your response, please provide the information requested, and please do not simply refer to or direct the Plaintiff's attention to medical records without substantively answering this interrogatory and without providing the information requested.

5.      Have you or has anyone acting on your behalf taken, recorded, transcribed, or obtained any statement, opinion, testimony, and/or affidavit related to the incident(s) made the basis of this lawsuit, specifically the medical services, care, and/or treatment provided to and received by Robin Marocchini on any occasion, or any interaction, discussion, and/or conversation with Robin Marocchini and/or any friend, family member, or acquaintance of Robin Marocchini? If so, please:

   a.      State the full and complete name, address, job title/position, employer, and telephone number of each individual from whom any such statement, opinion, testimony, recording, transcription, or affidavit was taken or obtained;

   b.      State the date and time on which each such statement, opinion, testimony, recording, transcription, or affidavit was taken, obtained, or provided, and whether it was written, typewritten, oral, electronic, digital, recorded (audio or video), or transcribed;

   c.      State the full and complete name(s) of the individual(s) or person(s) who took or solicited the statement(s), opinion(s), testimony, recording(s), transcription(s), or affidavit(s); and

   d.      Produce the original or a true and complete copy of each and every statement, opinion, testimony, recording, transcription, or affidavit taken or obtained from, and/or provided by Robin Marocchini or any of Plaintiff's family members, any of Plaintiff's friends or acquaintances, any Defendant,

any Defendant's employee(s), representative(s), medical staff member(s), and/or risk manager(s), and/or any other individual or person who is not a party or related to a party in this lawsuit (i.e. third parties and non-parties such as treating health care providers).

6.      Please identify, list, and provide the full name, address, occupation, and employer of each and every person whom you expect or intend to, or will, use, utilize, and/or offer as a witness in this case, including via affidavit, deposition, at trial, or for any other purpose, and state with specificity and in detail all accounts, recollections, remembrances, memories, testimony, opinions, and conclusions which you expect, anticipate, understand that, and/or are aware that each witness will provide, including all bases and grounds upon which said accounts, recollections, remembrances, memories, testimony, opinions, and conclusions are based with respect to each witness.

7.      Please identify, list, and provide the full name, address, occupation, and employer of each and every person whom you expect or intend to, or will, use, utilize, and/or offer as an expert witness in this case, including via affidavit, deposition, at trial, or for any other purpose, and state with specificity and in detail all testimony, opinions, and conclusions which you expect each expert witness to provide, including all bases, grounds, facts, materials, records, evidence, and medical literature upon which said testimony, opinions, and conclusions are based with respect to each expert witness.

This request seeks information related to, and disclosure of, all expert witnesses described in this interrogatory who are retained expert witness, and also all expert witness who are not retained expert witnesses, including, but not limited to, all treating physicians, nurses, patient care technicians, licensed practical nurses, physician assistants, surgical assistants, or any other type of treating health care provider from whom you expect or intend to, or may, elicit, offer, present, or

introduce any testimony, evidence, opinion, or conclusion that might be considered expert testimony under the Federal Rules of Civil Procedure.

8.     Please identify and list all exhibits, medical literature, articles, treatises, textbooks, studies, writings, papers, periodicals, charts, diagrams, images, blow-ups, depositions, deposition testimony, affidavits, documents, images, files, data, items, things, and information that you expect or intend to, or may, introduce or present at the trial of this case, including any and all such material that you expect or intend to, or may, attempt to present, introduce, display, or offer into evidence

9.     Please identify and list the full name and address of each and every entity, person, organization and health care provider from which you have received or obtained any record, medical record, billing record, document, file, imaging study, note, material, item, data, and/or information in this case pursuant to any formal or informal request, discovery request, or subpoena, including, but not limited to, any subpoena issued and/or served.

10.     Please identify all medical organizations that the Facility's doctors are members of; listing each member/doctor and each organization separately so that it is discernable which doctor belongs to each organization.

11.     Please state whether or not you had Robin Marocchini's consent to remove her ovaries and fallopian tubes.  If your answer is in the affirmative, please provide all supporting documents/recordings for same.

12.     Please state whether or not you, or any employee/agent, had any discussions with Robin Marocchini regarding ovarian removal prior to the subject surgery.  If your response is in the affirmative, please list the individuals present during said conversation(s) and the time, date and location of same.

13.     Please state whether or not you reviewed Robin Marocchini's medical records from Dr. Silver's office at any time prior to the subject surgery.

## **REQUESTS FOR PRODUCTION**

1.     Please produce true and complete <u>color</u> copies of all medical records, medical charts, notes, progress notes, nursing notes, physician notes, operative notes, surgical notes, radiology reports, imaging reports, electronic medical records, and any and all medical information which in any way relate(s) to medical services, care, and/or treatment provided to and received by Robin Marocchini while she was a patient of yours, your hospital, medical facility, medical institution, medical office, and/or medical practice, and/or while you were involved in the provision of medical services, care, and/or treatment to Robin Marocchini in any manner.

Responsive materials produced should include, but should not be limited to, medical reports, reports, consultations, bills, invoices, notes, letters, emails, memoranda, files, orders, pharmacy records, logs, lists, diaries, summaries, audio recordings, video recordings, graphs, charts, films, X-rays, images, imaging studies, digital images, photographs, scans, test results, laboratory results, notations, policies, procedures, protocols, guidelines, standards, rules, regulations, measures, customs, pamphlets, inserts, instructions, labels, and/or any other document or thing of any description and however named, which in any way relate(s) to the medical services, care, and/or treatment provided to and received by Robin Marocchini while she was a patient of yours and/or while you were involved in the provision of medical services, care, and/or treatment to Robin Marocchini in any manner.

2.     Please produce true and complete color copies of all billing records, itemizations, lists of charges, charges, invoices, requests for payment, demands for payment, and/or financial information which in any way relate(s) to services, medical services, care, and/or treatment

provided to and received by Robin Marocchini while she was a patient of yours, your hospital, your health system, your medical facility, your clinic, your group, your practice, your company, your contractor, your staffing group, your professional services group, and/or while you were involved in the provision of medical services, care, and/or treatment to Robin Marocchini in any manner.

3.      Please produce the originals or true and complete copies of all handwritten notes, typewritten notes, computer entries, records, reports, communications, messages, documents, files, charts, notices, notifications, data, materials, information, items, and things, and/or other notations, entries, or information of any type and/or description you have made which in any way relate to Robin Marocchini including, but not limited to, such materials as described above which are not or were not part of Robin Marocchini's medical records, charts, "designated record set," "legal health record(s)," and/or "legal medical record(s)."

4.      Please produce a complete copy of all Practice bylaws, medical staff bylaws, corporate bylaws, medical staff rules and regulations, and corporate rules and regulations from your facility, health care facility, medical facility, health care authority, corporation, company, limited liability company, group, business, contractor, parent company, subsidiary company, and/or practice that were in place, in force, and/or current as of October 1, 2019 to December 1, 2019.

5.      Please produce a complete copy of the original index and/or table of contents which identifies all policies, procedures, protocols, rules, regulations, practices, bylaws, standing orders, and/or measures that were in place, in force, and/or applied to medical staff, medical professionals, health care providers, and health care facilities who/that provided medical services, care, and/or

9

treatment to and/or were involved in the provision of medical services, care, and/or treatment to patients at Defendants' Facilities from October 1, 2019 to December 1, 2019.

6.      Please produce true and complete copies of your and/or your institution, facility, corporation, company, limited liability company, group, medical group, practice, medical practice, medical provider, health care provider, medical staff, staff, physician, physician assistant, nurse, nursing, registered nurse, mid-level provider, employee, agent, contractor, independent contractor, medical professional, emergency department, radiology department, provider, and/or patient code of conduct and code of ethics that was/were current as of October 1, 2019 to December 1, 2019.

7.      Please produce true and complete copies of all policies, procedures, rules, regulations, guidelines, recommendations, codes, and/or protocols pertaining to, referencing, and/or addressing in any way consent, informed consent, removal of ovaries, oophorectomy, opportunistic oophorectomy, risks associated with ovarian removal, hormone replacement therapy, and risks associated with hormone replacement therapy, that were current at your health care authority, hospital, facility, medical facility, health care facility, medical practice, medical group, company, corporation, limited liability company, business, and/or applied to your staff, contractors, medical providers, physicians, mid-level providers, physician assistants, nurses, technicians, technologists, and/or medical staff as of October 1, 2019 to December 1, 2019.

8.      Please produce true and complete copies of all policies, procedures, rules, regulations, guidelines, recommendations, codes, and/or protocols pertaining to, referencing, and/or addressing in any way patient files, medical records, medical record keeping, storage and maintenance of medical records, creation of medical records, changing, altering, editing, or amending medical records, charts, patient charts, medical charts, storage and maintenance of patient charts or medical charts, creation of patient charts or medical charts, patient chart or

10

medical chart keeping, changing, altering, or amending patient charts or medical charts, accessing patient medical records, accessing patient charts or medical charts, and/or who is authorized to access and/or view medical records, patient charts, and/or patient records that were current at your health care authority, hospital, facility, medical facility, health care facility, medical practice, medical group, company, corporation, limited liability company, business, and/or applied to your staff, contractors, medical providers, physicians, mid-level providers, physician assistants, nurses, technicians, technologists, and/or medical staff as of as of October 1, 2019 to December 1, 2019.

9.      Please produce complete copies of all communications, materials, items, things, and/or information that you possess, possessed, have, had, exchanged, and/or shared with any municipal, governmental, licensing, accreditation, governing, and/or certification entity, body, department, and/or board, including, but not limited to, the Alabama Department of Health, Alabama Department of Public Health, the Center for Health Statistics, the Centers for Disease Control and Prevention, the Food and Drug Administration, JCAHO, and/or any other similar type of entity in relation to Robin Marocchini.

10.     Please produce the original or a true and complete copy of each and every photograph, document, record, video recording, audio recording, graph, chart, X-ray, image, digital image, imaging study, radiology image, radiology study, test result, exemplar, material, thing, and/or item of demonstrative evidence (including blow-ups) that you may or will utilize, present, introduce, reference, and/or offer as evidence in this case, at trial, during any deposition, and/or as an attachment to any pleading, filing, or affidavit in this case.

11.     Please produce the originals or complete color copies of all patient sign-in sheets, lists, and/or logs, reports, minutes, lectures, notes, logs, sign-in sheets, transcriptions, diaries,

documents, records, materials, and/or information that contain(s) any mention of and/or reference to Robin Marocchini in any way.

12.     Please produce a true and complete audit trail and audit log of all events entered in, and/or all events or activity which occurred in relation to, Robin Marocchini's computer-generated and/or electronic medical records, electronic health records, and/or patient files and/or charts regarding the medical services, care, and/or treatment provided to and received by Mrs. Marocchini, including, but not limited to, data showing the time that each event, entry, piece of data, and/or record was accessed, viewed, entered, altered, and/or deleted, the identification of each and every person making each entry, alteration, and/or deletion, and/or accessing or viewing the record(s) and/or information, the date and time of each and every entry, alteration, deletion, access, and/or viewing, and all events, information, and/or data that were accessed, viewed, entered, changed, altered, amended, deleted, added, and/or modified by each and every such person.

This request seeks production of <u>all</u> information identified, described, and referenced above from <u>any time</u> in the history of Robin Marocchini's records and patient information up to the date that your responses to these discovery requests are provided. This request is not limited or restricted in any way, and should not be considered, interpreted, or observed by you as limited or restricted in any way, with respect to the expanse and/or scope of time that is pertinent to your responsive production of the requested materials and information

13.     For each and every expert witness whom you expect or intend to, or may, call as an expert witness or whom you expect or intend to, or may, testify or provide testimony in this case, whether via affidavit, deposition, or at trial, whom you have retained and/or consulted as an expert witness in this case, whom you have not retained as an expert witness in this case, who is and/or

was a treating physician, treating nurse, treating physician assistant, treating mid-level provider, treating nurse practitioner, treating technician, treating technologist, treating health care provider, treating medical professional, and/or treating medical staff member of Robin Marocchini or from whom you have obtained or expect or intend to, or may, obtain any opinion, conclusion, or testimony in this case, please produce originals or true and complete copies of:

a.    all *curriculum vitae* for each and every such person;

b.    a complete bibliography of all writings by each expert, including for each such writing the title, the name and address of the publisher, the date of publication, and, if published in or as an article, chapter, or other part of a magazine, pamphlet, book, journal, textbook, guide, manual, handbook, periodical, newspaper, newsletter, or other publication, the name of such and the name and address of its publisher;

c.    all records, recordings, reports, correspondence, statements, files, notes, memoranda, logs diaries, notations, policies, protocols, rules, regulations, statutes, treatises, articles, literature, guidelines, checklists, standards, and/or other documents or materials of any description or however named which have been provided to, received from, generated, created, or reviewed by or relied upon by the expert in formulating his/her opinion(s), conclusion(s), and/or testimony in this case;

d.    all literature, medical literature, papers, treatises, articles, periodicals, lectures, reports, research, test results, studies, data, and/or other documents, materials, or information of any description and/or however named, which were reviewed, prepared, received, acquired, obtained, referenced, created, or generated, in whole or in part, by the expert which in any way pertain or relate to the subject matter and/or issues of this case, Plaintiff's claims, Plaintiff's allegations, and/or any of the events, occurrences, facts, circumstances, evidence, and/or testimony serving as the basis of, and/or involved in, this action;

e.    a list of all matters, cases, arbitrations, and/or legal matters or litigation in which each expert has been consulted and/or retained by attorneys, whether on behalf of a plaintiff, defendant, or an insurance company (this request specifically includes, but is not limited to, the names of actual or potential plaintiffs, defendants, insurance companies, venues, dates of consultation, retention, deposition, and/or testimony provided at trial, and the names of all attorneys involved, whether for a plaintiff or defendant);

13

f.      a list of all matters, cases, arbitrations, and/or legal matters or litigation in which each expert has been consulted, involved, and/or has provided deposition, affidavit, hearing, and/or trial testimony prior to each expert's involvement in this case, as well as a list of all current, pending, and/or unresolved matters, cases, arbitrations, and/or legal matters or litigation in which each expert is currently and/or presently being consulted, involved, and/or has provided, is providing, and/or will provide deposition, affidavit, hearing, and/or trial testimony;

g.      all communications, memoranda, messages, letters, emails, notes, facsimiles, correspondences, documents, materials, lists, pieces of information, summaries, literature, medical literature, studies, treatises, articles, lectures, books, manuals, handbooks, policies, procedures, rules, regulations, standards, orders, items, and/or things that you and/or any person and/or entity acting on your behalf, including your attorneys, representatives, affiliates, nurses, and/or any other person or entity, however described and/or however named, that you have sent or provided to and/or received from or been provided by each retained, non-retained, and/or consulted expert or treating physician or health care provider and/or any person and/or entity acting on each expert's behalf, including each expert's attorneys, representatives, affiliates, nurses, and/or any other person or entity, however described and/or however named;

h.      all documents, contracts, agreements, engagement letters, understandings, arrangements, fee schedules, bills, invoices, receipts, checks, monetary transfers, pay stubs, W-9 forms, 1099 forms, timesheets, time entries, delineations or notes of time spent, correspondence, communications, letters, emails, facsimiles, messages, audio recordings, video recordings, materials, items, and/or things, whether digital, electronic, physical, audio, however named and/or however described, related to and/or containing information regarding the terms, conditions, parameters, nature(s), charges, time spent, and/or payment of/for each expert's involvement in this lawsuit and litigation and the services provided and/or rendered by each expert related to this lawsuit and litigation, as well as all time spent by each expert in which he/she was and/or has been involved in, providing services in, and/or working on this lawsuit and litigation in and way, manner, or fashion; and

i.      all reports, memoranda, notes, and/or drafts prepared by each expert relating to this case in any way.

14.    Please produce the original or a true and complete copy of each and every report, draft, opinion, publication, book, treatise, journal, pamphlet, text, policy, procedure, protocol, rule, regulation, statute, code, guideline, statute, regulation, order, custom, practice, handbook, manual,

measure, checklist, and any other document, material, item, or thing, however named or described, provided to, received, reviewed, generated, created, produced, and/or prepared by your expert witness(es) whom you may utilize, call, and/or intend to utilize or call to testify in this case, whether via deposition, affidavit, or at trial, and which your expert witness(es) will or may rely upon or use in any manner, fashion, or way in forming the basis or bases of testimony or any opinion regarding the allegations contained in Plaintiff's Complaint, any amendment to Plaintiff's Complaint, the subject matter of this lawsuit, and/or the medical services, care, and/or treatment provided to Robin Marocchini by you or any of your agents, employees, employers, servants, borrowed servants, loaned servants, contractors, independent contractors, partners, facilities, hospitals, health care providers, entities, physicians, nurses, registered nurses, nurse assistants, physician assistants, mid-level providers, technicians, technologists, and/or medical staff, and/or in which you or any person or entity acting on your behalf was involved in any way.

15.    Please produce a copy of each and every communication, whether oral, written, recorded, or produced or contained in digital or electronic form, between or among you and/or physicians, health care providers, nurses, registered nurses, nurse practitioners, nurse assistants, physician assistants, mid-level providers, nurse practitioners, technicians, technologists, pharmacists, medical staff, hospital staff, hospital administrators, Robin Marocchini, Mrs. Marocchini's friends or acquaintances, and/or members of Robin Marocchini's family, whether by marriage or blood, regarding, pertaining to, and/or related to medical services, care, and/or treatment provided to and received by Robin Marocchini.

15

Respectfully submitted,

BRASWELL MURPHY, LLC
Attorneys for Plaintiff


/s/ *Kasie M. Braswell*
KASIE M. BRASWELL (BRASK5769)
E-mail: kasie@braswellmurphy.com
D. BRIAN MURPHY (MURPHD0754)
E-mail: brian@braswellmurphy.com
105 N. Conception Street, Suite 100
Mobile, Alabama  36602
(251) 438-7503 Office
(251) 438-7949 Facsimile


**TO BE SERVED WITH THE COMPLAINT**