IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ROBIN MAROCCHINI, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *   Civil Action No.: 1:20-cv-356-CG-N |
| | * |
| ROBERT C. BROWN and | *   JURY TRIAL DEMANDED |
| ROBERT C. BROWN, MD, P.C., | * |
| d/b/a BROWN, PEARSON & GUEPET | * |
| GYNECOLOGY AND UROGYNECOLOGY, | * |
| | * |
| Defendants. | * |

## SECOND AMENDED COMPLAINT

COMES NOW Plaintiff, Robin Marocchini by and through her attorneys, and files this her Second Amended Complaint against Defendants, Robert C. Brown and Robert C. Brown, MD, P.C., d/b/a Brown, Pearson & Guepet Gynecology and Urogynecology, and for their causes of action would show unto the Court the following:

**PARTIES**

1. Plaintiff Robin Marocchini is over the age of majority and is a resident and citizen of the state of Florida.

2. Defendant Robert C. Brown is over the age of majority and is a resident and citizen of the state of Alabama.

3. Defendant Robert C. Brown, MD, P.C., d/b/a Brown, Pearson & Guepet Gynecology and Urogynecology (hereinafter "BPG") is a professional corporation organized and existing under the laws of the state of Alabama, with its principal place of business in Fairhope, Alabama. Robert C. Brown is the incorporator and agent of Robert C. Brown, MD, P.C., d/b/a Brown, Pearson & Guepet Gynecology and Urogynecology.

## JURISDICTION AND VENUE

4. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states. Further, venue is proper in the District Court for the Southern District of Alabama under 28 U.S.C. § 1391 because the events giving rise to the claim occurred in this District and the Defendants are subject to personal jurisdiction in this District.

## STATEMENT OF FACTS

5. On October 15, 2019, Plaintiff Robin Marocchini was seen by Dr. Robert Brown to discuss medical issues that she was having with vaginal prolapse.

**6. During this visit, Plaintiff provided Dr. Brown with a copy of her prior medical records, including, but not limited to, Plaintiff's prior operative report from her hysterectomy that was performed in January of 2019.**

**7. Dr. Brown read the operative report but, according to Dr. Brown, did not understand it and did not ask the Plaintiff any questions about the operative report or her prior hysterectomy.**

8. After an exam and consult by Dr. Brown, he recommended that Mrs. Marocchini have a surgery to help repair her prolapse. The recommended surgery was a sacrocolpopexy. No other procedures were discussed at the initial office visit.

9. Mrs. Marocchini was scheduled for surgery on November 11, 2019, with a pre-op appointment on November 5, 2019.

10. Mrs. Marocchini attended the pre-op visit at Dr. Brown's office as scheduled on November 5, 2019. Mrs. Marocchini and Dr. Brown discussed the procedure as well as the risks associated with same. At this office visit, Mrs. Marocchini, was provided with two forms: (1) an

"Informed Consent for Pelvic Prolapse and Incontinence Surgery" and (2) a BPG Surgical Consent form for a "robot assisted sacrocolpopexy and possible posterior repair."  Mrs. Marocchini executed both consent forms.

11. On November 11, 2019, Mrs. Marocchini arrived at Thomas Hospital in Fairhope, Alabama for her scheduled surgery.

12. During the surgery, and while Mrs. Marocchini was completely unconscious, Dr. Brown stopped the surgery and called Mrs. Marocchini's husband on his cell phone.  He explained to Mr. Marocchini that during the surgery he noticed that Mrs. Marocchini still had her ovaries.  Dr. Brown stated that he was "surprised" that Mrs. Marocchini still had her ovaries and that he wanted to remove them.  Dr. Brown never asked permission to remove the ovaries, he never explained the risks of ovarian removal, nor did he go over any "pros and cons" of ovarian removal.  This phone call lasted almost exactly one (1) minute.

13. Prior to the aforementioned phone call, Dr. Brown had never discussed Mrs. Marocchini's ovaries with her.

14. Dr. Brown proceeded with the surgery and removed Mrs. Marocchini's ovaries and fallopian tubes while he was preforming the scheduled sacrocolpopexy.

15. When Mrs. Marocchini awoke from her surgery, she noticed a patch on her arm and asked her husband what it was.  He advised her that Dr. Brown had removed her ovaries during the surgery and that the patch was for hormone replacement therapy.

16. Mrs. Marocchini asked Dr. Brown why he had removed her ovaries when they have never discussed ovarian removal or "anything to do with my ovaries."  Dr. Brown responded that he thought she would have wanted them removed.

17. Mrs. Marocchini did not want her ovaries removed. After extensive research prior to her first operation in January 2019, she made the conscious decision to retain her ovaries. Her ovaries and fallopian tubes were removed by Dr. Brown without her consent, against her wishes, and to the detriment of her physical and mental health.

18. There was no pre-operative discussion between Dr. Brown and Robin Marocchini regarding the performance of any concomitant procedures other than a prophylactic sling for occult stress urinary incontinence. There was no discussion regarding ovarian conservation versus removal or the associated risks and benefits thereof. Dr. Brown did not elicit the personal preferences of the Plaintiff nor did he consider her individualized risk of conservation versus removal when taking such things as family history of breast or ovarian cancer, psychological well-being, sexual function, and candidacy for synthetic hormone replacement therapy into consideration. Dr. Brown did not relay any of the published medical evidence regarding opportunistic oophorectomy and he did not obtain informed consent, or any consent, to perform ovarian removal.

**19. Upon information and belief, Dr. Brown entered into Mrs. Marocchini's official medical record a diagnosis of female Pelvic Inflammatory Disease ("PID"). PID is an infection of a woman's reproductive organs that is most often caused by sexually transmitted diseases. Upon information and belief, Dr. Brown noted that this diagnosis was made on November 5, 2019 (during Mrs. Marocchini's pre-op appointment); however, it was not entered into her medical chart/record until on or about November 25, 2019, weeks after her surgery. Mrs. Marocchini did not suffer from PID; Dr. Brown never discussed PID with Mrs. Marocchini; nor did he prescribe her any medications that would have been necessary to treat PID, if she actually did have the disease.**

## COUNT I
## ALABAMA MEDICAL LIABILITY ACT

20. Plaintiff adopts and incorporates by reference all of the allegations of the preceding paragraphs of this Complaint as if the same were set out fully herein.

21. Defendants Robert C. Brown and Robert C. Brown, MD, P.C., d/b/a Brown, Pearson & Guepet Gynecology and Urogynecology are both "health care providers" within the meaning of the Alabama Medical Liability Act of 1987, §6-5-542 et seq. of the Code of Alabama (1975).

22. In treating Mrs. Marocchini, the Defendants, including any individuals who were acting as employees or agents of any of the Defendants at relevant times, had a duty to exercise such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice ordinarily have and exercise under similar circumstances.

23. Defendants and their employees, agents and/or servants negligently and/or wantonly breached the standard of care owed to Mrs. Marocchini by failing to comply with the applicable standard of care, including specifically as follows:

    a. Failing to review and/or appreciate **and/or understand** Mrs. Marocchini's relevant medical history;

    b. Failing to elicit the medical personal preferences of the Plaintiff with regard to her ovaries and fallopian tubes;

    c. Failing to consider Plaintiff's individualized risk of conservation versus removal when taking such things as family history of breast or ovarian cancer, psychological well-being, sexual function, and candidacy for synthetic hormone replacement therapy prior to removing her ovaries and fallopian tubes;

    d.    Failing to relay to Plaintiff any of the published medical evidence regarding opportunistic oophorectomy;

    e.    Failing to obtain consent and/or informed consent from Mrs. Marocchini to remove her ovaries and fallopian tubes;

    f.    Failing to inform Mrs. Marocchini of the risks associated with opportunistic oophorectomy;

    g.    Failing to inform Mrs. Marocchini of the risks associated with hormone replacement therapy;

    h.    Failing to develop and implement the policies and procedures applicable to patient consent;

    i.    Failing to develop and implement the policies and procedures applicable to the review of patients' prior medical records and medical history;

    j.    Failing to develop and implement sufficient policies and procedures relative to patient-physician communication;

    k.    Failing to adhere to the minimum standard of care with regard to patient consent for medical procedures; and

    l.    Failing to follow American Medical Association's guidelines for obtaining proper patient consent for medical procedures.

    **m.    Failing to question Mrs. Marocchini about portions of her prior medical history and records that Dr. Brown did not understand.**

    **n.    Failing to maintain an accurate medical record as required by § 34-24-504, *Ala. Code* 1975.**

   **o.**   **Intentionally, knowingly or willfully causing or permitting a false or misleading representation of a material fact to be entered into Mrs. Marocchini's medical record, in violation of § 34-24-504, *Ala. Code* 1975 and Alabama Medical License Commission Rule 545-X-4.06(11).**

**COUNT II**
**NEGLIGENCE AND WANTONESS**

24. Plaintiff adopts and incorporates by reference all of the allegations of the preceding paragraphs of this Complaint as if the same were set out fully herein.

25. Defendants had a duty to provide medical treatment to Mrs. Marocchini that was within the applicable standard of care.

26. Defendants breached this duty as listed above, and by negligently and/or wantonly failing to review **and understand** Mrs. Marocchini's relevant medical history and by removing her ovaries and fallopian tubes against her wishes, without her consent and by preforming a medical procedure that was not therapeutically necessary or advisable.

27. As a direct and proximate result of the Defendants' actions, Mrs. Marocchini has suffered physical and psychological injury along with pain and suffering, mental anguish, anxiety, depression, permanent injury, post-traumatic stress disorder, loss of enjoyment of life, and consequential and incidental damages. These damages are expected to continue in the future.

**COUNT III**
**ASSAULT AND BATTERY and TRESPASS TO PERSON**

28. Plaintiff adopts and incorporates by reference all of the allegations of the preceding paragraphs of this Complaint as if the same were set out fully herein.

29. Dr. Brown preformed an unnecessary and ill-advised medical procedure on Plaintiff, while Plaintiff was unconscious, that Plaintiff had not consented to and did not want.

30. Dr. Brown, during this procedure, intended to, and did, remove Plaintiff's ovaries and fallopian tubes without her consent.

31. Dr. Brown's conduct in this regard was offensive to Plaintiff and all other reasonable people.

32. As a direct and proximate result of the Defendants' actions, Mrs. Marocchini has suffered physical and psychological injury along with pain and suffering, mental anguish, anxiety, depression, permanent injury, post-traumatic stress disorder, loss of enjoyment of life, and consequential and incidental damages.  These damages are expected to continue in the future.

### COUNT IV
### LOSS OF CONSORTIUM

33. Plaintiff adopts and incorporates by reference all of the allegations of the preceding paragraphs of this Complaint as if the same were set out fully herein.

34. Robin Marocchini has been married to her husband, Thomas Marocchini, in excess of 31 years.  Plaintiff suffered a loss of consortium after November 11, 2019.  Defendants' negligence impaired the enjoyment of Mrs. Marocchini's marriage and diminished her capacity to provide the customary love, companionship, affection, society, comfort, solace and support that Mr. and Mrs. Marocchini experienced prior to Defendants' negligence.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully demands a judgement against these Defendants, jointly and severally, for compensatory and punitive damages in an amount to be assessed by a jury together with interest, costs and such other or further relief to which Plaintiff may be entitled.

**PLAINTIFF RESPECTFULLY DEMANDS A TRIAL BY JURY.**

Respectfully submitted,

BRASWELL MURPHY, LLC
Attorneys for Plaintiff


*/s/ Kasie M. Braswell*
KASIE M. BRASWELL (BRASK5769)
E-mail: kasie@braswellmurphy.com
D. BRIAN MURPHY (MURPHD0754)
E-mail: brian@braswellmurphy.com
105 N. Conception Street, Suite 100
Mobile, Alabama  36602
(251) 438-7503 Office
(251) 438-7949 Facsimile

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 18th day of March 2021, electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Mark W. Lee, Esq.
PARSONS, LEE & JULIANO, P.C.
600 Vestavia Parkway
Suite 300, Shelby Building
Birmingham, AL  35216
*Counsel for Defendants*


*/s/ Kasie M. Braswell*
COUNSEL